IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWARD J. HENSLEY,                    No.  CIV.S-04-2236 DAD

          Plaintiff,
                                      ORDER
     v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

          Defendant.
_____/

          This social security action was submitted to the court,
without oral argument, for ruling on plaintiff's motion for summary
judgment and/or remand and defendant's cross-motion for summary
judgment.  For the reasons explained below, the decision of the
Commissioner of Social Security ("Commissioner") is reversed and this
matter is remanded for further proceedings.

**PROCEDURAL BACKGROUND**

          Plaintiff Edward J. Hensley applied for Disability
Insurance Benefits and Supplemental Security Income under Titles II

1

and XVI of the Social Security Act (the "Act"), respectively.
(Transcript ("Tr.") at 342-45, 359, 606-09.)   The Commissioner denied
plaintiff's applications initially and on reconsideration.   (Tr. at
316-19, 325-29, 604-05, 614-22.)   Pursuant to plaintiff's request, a
hearing was held before an administrative law judge ("ALJ") on
February 10, 2003, at which time plaintiff was represented by
counsel.   (Tr. at 652-81.)   In a decision issued on May 8, 2003, the
ALJ determined that plaintiff was not disabled.   (Tr. at 32-41.)   The
ALJ entered the following findings in this regard:

> 1.   The claimant was born on March 27, 1953.  He was 42 years old as of the filing date of his application and is currently 50 years old.
>
> 2.   The claimant has not engaged in substantial gainful activity since his alleged onset date.
>
> 3.   The evidence supports a finding that the claimant's polysubstance abuse (drugs and alcohol) and depression, in combination, meet the criteria of Medical Listing 12.09.  His cirrhosis of the liver, hepatitis C, emphysema, hypertension, borderline intellectual functioning, and depression, are severe impairments within the meaning of 20 CFR 404. 1520(c) and 416.920(c), but do not meet or equal the criteria of a listing described in Appendix 1 of the Regulations (20 CFR Part 404, Subpart P).
>
> 4.   The claimant's allegation that he is precluded from all work activity is not supported by the evidence of record when polysubstance abuse (drugs and alcohol) is disregarded, as further described in the body of this decision.
>
> 5.   The greater weight of the evidence of record establishes that from December

1, 1995 to the present, the claimant
had the residual functional capacity
for medium work as further described in
the body of this decision.

6.    The limitations caused by his cirrhosis
      of the liver, hepatitis C, emphysema,
      hypertension, borderline intellectual
      functioning, depression, and
      polysubstance abuse (drugs and
      alcohol), in combination, would result
      in disability.  Without the
      polysubstance abuse (drugs and
      alcohol), the limitations of his
      cirrhosis of the liver, hepatitis C,
      emphysema, hypertension, borderline
      intellectual functioning, and
      depression are not disabling.
      Therefore, his polysubstance abuse
      (drugs and alcohol) is material, as the
      claimant is found disabled when its
      limitations are included in the
      residual functional capacity and is
      found not disabled when its limitations
      are not included in the residual
      functional capacity.

7.    Considering the claimant's residual
      functional capacity disregarding
      polysubstance abuse (drugs and
      alcohol), he would be unable to perform
      his past relevant work.

8.    Disregarding polysubstance abuse (drugs
      and alcohol), and considering the
      claimant's age, education, and
      vocational factors, he is found not
      disabled using Medical-Vocational Rule
      203.22 as a framework for
      decisionmaking.

9.    The claimant is not under a
      "disability" as defined in the Social
      Security Act, pursuant to Sections
      216(i), 1602, and 1614(a)(3)(A) of the
      Act, as amended by Pub. L. 104-121.

(Tr. at 40-41.)  The ALJ's decision became the final decision of the

Administration when the Appeals Council declined review on July 7,

3

1   2004.  (Tr. at 11-15.)  Plaintiff then sought judicial review,

2   pursuant to 42 U.S.C. § 405(g), by filing the complaint in this

3   action on October 21, 2004.

4   **LEGAL STANDARD**

5           The Commissioner's decision that a claimant is not disabled

6   will be upheld if the findings of fact are supported by substantial

7   evidence and the proper legal standards were applied.  Schneider v.

8   Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

9   Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

10   1999).  The findings of the Commissioner as to any fact, if supported

11   by substantial evidence, are conclusive.  See Miller v. Heckler, 770

12   F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant

13   evidence as a reasonable mind might accept as adequate to support a

14   conclusion.  Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993,

15   995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

16   (1971)).

17           A reviewing court must consider the record as a whole,

18   weighing both the evidence that supports and the evidence that

19   detracts from the ALJ's conclusion.  See Jones, 760 F.2d at 995.  The

20   court may not affirm the ALJ's decision simply by isolating a

21   specific quantum of supporting evidence.  Id.; see also Hammock v.

22   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence

23   supports the administrative findings, or if there is conflicting

24   evidence supporting a finding of either disability or nondisability,

25   the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d

26   1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

/////

/////

1

**APPLICATION**

2          Plaintiff advances four arguments in his motion for summary

3    judgment.  First, plaintiff argues that the ALJ erred in relying on

4    the Medical-Vocational Guidelines (the "grids") in finding him not

5    disabled.  Second, plaintiff maintains that the ALJ erred in finding

6    plaintiff's polysubstance abuse material to a finding of disability.

7    Third, plaintiff contends the ALJ failed to consider all of

8    plaintiff's impairments, both individually and in combination.

9    Fourth, he argues that the ALJ improperly assessed his credibility.

10   The court addresses these arguments below, although not in the order

11   in which plaintiff has presented them.

12          Beginning with plaintiff's credibility argument, it is

13   well-established that the determination of credibility is a function

14   of the ALJ, acting on behalf of the Commissioner.  See Saelee v.

15   Chater, 94 F.3d 520, 522 (9th Cir. 1995).  An ALJ's assessment of

16   credibility should, in general, be given great weight.  Nyman v.

17   Heckler, 779 F.2d 528, 530-31 (9th Cir. 1985).  Thus, questions of

18   credibility and resolution of conflicts in the testimony are

19   functions solely of the Commissioner.  Morgan, 169 F.3d at 599.  In

20   evaluating a claimant's subjective testimony regarding pain and the

21   severity of his or her symptoms an ALJ may consider the presence or

22   absence of supporting objective medical evidence along with other

23   factors.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991);

24   see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

25   Ordinary techniques of credibility evaluation may be employed, and

26   the adjudicator may take into account prior inconsistent statements

1   or a lack of candor by the witness.  See Fair v. Bowen, 885 F.2d 597,
2   604 n.5 (9th Cir. 1989).

3       Nonetheless, an ALJ's rejection of a claimant's testimony
4   must be supported by specific findings.  Morgan, 169 F.3d at 599;
5   Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993)(citing Miller,
6   770 F.2d at 848).  Once a claimant has presented evidence of an
7   underlying impairment, the ALJ may not discredit the claimant's
8   testimony as to the severity of his or her symptoms merely because
9   the testimony is unsupported by objective medical evidence.  Reddick
10  v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Chater, 119
11  F.3d 789, 792 (9th Cir. 1997).  Rather, "the ALJ can reject the
12  claimant's testimony about the severity of [his or] her symptoms only
13  by offering specific, clear and convincing reasons for doing so."
14  Light, 119 F.3d at 792.  See also Reddick, 157 F.3d at 722.

15      Here, it is clear that plaintiff's medical records document
16  conditions which might reasonably be expected to cause the symptoms
17  alleged by plaintiff.  The ALJ found plaintiff's statements regarding
18  the impact of his impairments on his ability to work to be less than
19  credible because he found those statements to be inconsistent with
20  documentary reports.  (Tr. at 38.)  However, the court concludes that
21  the ALJ failed to articulate specific, clear and convincing reasons
22  for rejecting this aspect of plaintiff's testimony.  In this regard,
23  the ALJ's summary of the evidence essentially characterizes plaintiff
24  as a self-sufficient individual who cooks for himself, takes care of
25  his home and grooms himself.  (Tr. at 38.)  That summary also paints
26  plaintiff as a fairly active and mobile individual.  (Id.)  However,

7

the evidence cited by the ALJ in support of that summary does not support such a characterization.  Rather, the record reflects that plaintiff walks about seven blocks to the welfare office everyday, a walk which takes forty-five minutes to an hour because plaintiff walks slowly and rests often.  (Tr. at 373-74.)  His cooking consists merely of making a can of soup or "warm[ing] things up."  (Tr. at 373.)  Simple household chores in his small apartment require breaks to rest.  (Tr. at 373.)  He also naps twice a day for a total of four hours and lays around watching television otherwise.  (Tr. at 374.)

         The ALJ also mischaracterized the report of David C. Richwerger, Ed.D., stating that plaintiff reported to Richwerger that he essentially cared for himself without difficulty.  (Tr. at 38.)  In fact, Dr. Richwerger's report reflects that plaintiff came to his examination appearing unshaven, disheveled with blood shot eyes and a very strong odor of alcohol.  (Tr. at 422.)  Finally, the ALJ pointed to evidence that plaintiff regularly attended Alcoholics Anonymous meetings and went to the store as inconsistent with plaintiff's statements regarding the impact of his impairments on his ability to perform work.  (Tr. at 38.)  However, the ALJ failed to note that the location of the store and the AA meetings were within two block of his home, where plaintiff generally stays alone to avoid people.  (Tr. at 666-69.)

         Finally, the ALJ also found plaintiff less than credible due to his "refusal to stop drinking" or "participate in a farm program for polysubstance abuse (drugs and alcohol)."  (Tr. at 38.)  While not clearly explained, it appears the ALJ may have been

1  suggesting that because plaintiff was not seeking treatment for his
2  polysubstance abuse problem his statements regarding the severity of
3  his condition were not credible.  That would be an insufficient basis
4  upon which to reject plaintiff's subjective complaints.  In this
5  regard, it has been recognized that an alcoholic has a tendency to
6  deny or rationalize his abuse.  <u>See</u> <u>Tylitzki v. Shalala</u>, 999 F.2d
7  1411, 1414 (9th Cir. 1993); <u>Young v. Heckler</u>, 803 F.2d 963, 966 (9th
8  Cir. 1986); <u>Brown v. Heckler</u>, 713 F.2d 441, 442-43 (9th Cir. 1983).

9       For these reasons, the court finds that the ALJ failed to
10  reject plaintiff's testimony regarding the severity of his symptoms
11  and their impact on his ability to work by offering specific, clear
12  and convincing reasons for doing so.  Accordingly, the Commissioner's
13  decision must be reversed.

14       Reversal also is required because the ALJ erred in relying
15  on the Medical-Vocational Guidelines in finding plaintiff not
16  disabled and in failing to take testimony from a vocational expert.
17  At the fifth and final step of the sequential evaluation process, the
18  Commissioner can satisfy the burden of showing that the claimant can
19  perform other types of work in the national economy, given the
20  claimant's age, education, and work experience, by either (1)
21  applying the Medical-Vocational Guidelines (the grids) in appropriate
22  circumstances or (2) taking the testimony of a vocational expert.
23  <u>See</u> <u>Burkhart</u>, 856 F.2d at 1340 (citing <u>Desrosiers v. Sec'y of Health</u>
24  <u>& Human Services</u>, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J.,
25  concurring)); <u>Polny v. Bowen</u>, 864 F.2d 661, 663 (9th Cir. 1988).
26  /////

The grids are designed to show available work in the national economy for individuals with exertional (i.e., strength) limitations, as impacted by the factors of age, education, and work experience.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d) & (e). They may be utilized as long as they "accurately and completely describe the claimant's abilities and limitations." Burkhart, 856 F.2d at 1340 (citing Jones, 760 F.2d at 998); see also Reddick, 157 F.3d at 729; 20 C.F.R. Pt. 404, Subpart P, App. 2, § 200.00(b). However, when a claimant's nonexertional limitations are sufficiently severe to significantly limit the range of work permitted by exertional limitations, the grids are inapplicable.  See Burkhart, 856 F.2d at 1340; Desrosiers, 846 F.2d at 577; see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  Nonetheless, even where nonexertional limitations are alleged, use of the grids is not precluded unless the nonexertional impairment is sufficiently severe. See Tackett, 180 F.3d at 1101-02; Cooper v. Bowen, 815 F.2d 557, 560 (9th Cir. 1987).

Here, even after disregarding plaintiff's polysubstance abuse, the ALJ found plaintiff to have several nonexertional limitations, such as an inability to work around concentrated fumes, odors and smoke; mild difficulty maintaining social functioning; and

/////

/////

/////

/////

/////

1  moderate difficulty maintaining concentration, persistence and pace.[1]

2  (Tr. at 39.)  Because these nonexertional impairments significantly

3  limit the range of work permitted by plaintiff's exertional

4  limitations, the grids did not accurately and completely describe

5  plaintiff's abilities and limitations.  Testimony from a vocational

6  expert is necessary under these circumstances.  See Holohan v.

7  Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001); Cooper v. Sullivan,

8  880 F.2d 1152, 1156 n.10 (9th Cir. 1989) ("However, if she were not

9  capable of doing the full range of medium work because of a

10  nonexertional impairment, then the ALJ would not be allowed to rely

11  solely on the grids to direct a finding of not disabled."); Kail v.

12  Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984)("Guidelines are not

13  determinative of disability where, as here, a claimant cannot

14  tolerate dust, fumes or heat."); see also Carr v. Sullivan, 772 F.

15  Supp. 522, 529 (E.D. Wash. 1991)("A severe mental impairment

16  necessarily creates limitations in functional capacity beyond

17  strength limitations.").

18       In light of these errors, reversal is required.  Remand is

19  the appropriate remedy when, as is the case here, a vocational expert

20  has not had the opportunity to consider an accurate description of a

21  /////

22

23       [1]  The ALJ also found plaintiff limited to performing "simple
   and repetitive tasks" due to borderline intellectual functioning and
24  depression.  (Tr. at 39.)  This may also amount to a nonexertional
   limitation limiting the number of jobs available to plaintiff.  See
25  Meissl v. Barnhart, 403 F. Supp. 2d 981 (C.D. Cal. 2005)(recognizing
   that whether unskilled work involves simple and repetitive tasks
26  depends on the level of reasoning required by the work).

1  claimant's limitations.  Andrews v. Shalala, 53 F.3d 1035, 1042 (9th

2  Cir. 1995).

3          In light of the ALJ's failure to properly credit

4  plaintiff's testimony, on remand the ALJ shall also take into account

5  plaintiff's subjective complaints regarding his fatigue, malaise,

6  rectal and urethral bleeding, and difficulty breathing.  These are

7  the problems associated with plaintiff's Hepatitis C, cirrhosis of

8  the liver and emphysema to which plaintiff testified.  See Harman v.

9  Apfel, 211 F.3d 1172, 1180-81 (9th Cir. 2000)(remanding for further

10 proceedings even though district court found fault with ALJ's

11 rejection of claimant's testimony because there were "sufficient

12 unanswered questions").

13         Finally, because the ALJ failed to properly credit

14 plaintiff's testimony and failed to hear from a vocational expert at

15 step five of the sequential evaluation, his determination regarding

16 plaintiff's polysubstance abuse is not supported by substantial

17 evidence.  The ALJ's determination that plaintiff would still be

18 found disabled if he stopped using drugs or alcohol necessarily

19 cannot stand under these circumstances.[2]  However, once plaintiff's

20

21     [2] In Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001) the
   Ninth Circuit held that, in determining whether an individual is
   disabled, the ALJ must conduct the five-step sequential evaluation
22 process before considering the impact of alcoholism or drug
   addiction.  Bustamante, 262 F.3d at 955.  The ALJ is required first
23 to apply the five-step inquiry to determine whether the claimant is
   disabled without segregating out the claimant's alcohol or drug use.
24 Id.  If the claimant is found disabled under the five-step inquiry,
   then the ALJ shall determine whether the claimant would still be
25 found disabled if he or she stopped using drugs or alcohol.  Id.
   Only after completing these steps shall the ALJ evaluate the
26 claimant's residual functional capacity.  Id.

testimony is credited and a vocational expert is heard from on

remand, the ALJ will be required to re-address whether plaintiff

would still be found disabled if he or she stopped using drugs and

alcohol.[3]

**CONCLUSION**

Accordingly, the court HEREBY ORDERS that:

1.  Plaintiff's motion for summary judgment and/or remand
is granted;

2.  Defendant's cross-motion for summary judgment is
denied; and

3.  The decision of the Commissioner is reversed and this
case is remanded for rehearing consistent with the analysis set forth
herein.  See 42 U.S.C. § 405(g), Sentence Four.

DATED: March 29, 2006.

_Dale A. Drozd_
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:th
Ddad1\orders.socsec\hensley2236.order.v2

---

[3] Plaintiff's suggestion that his drug and alcohol abuse cannot
be segregated from his other impairments is rejected.  While under
some circumstances the required line drawing may prove difficult, in
plaintiff's case several physicians have distinguished between those
problems associated with his polysubstance abuse and those which are
not.  (Tr. at 408, 425, 527, 537, 593.)